UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
THE ESTATE OF STANLEY KAUFFMANN,

                     Plaintiff,                     COMPLAINT FOR
                                                              COPYRIGHT INFRINGEMENT

      - against -

ROCHESTER INSTITUTE OF TECHNOLOGY,             JURY DEMANDED

                     Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

      This is an action for copyright infringement involving the unauthorized and unlawful international exploitation by the defendant's book publishing enterprise of -- for present purposes -- forty-four separate copyrighted works created by the late and internationally-renowned critic and author Stanley Kauffmann, who died on October 9, 2013. Acknowledging that Mr. Kauffmann, and now his Estate, owns all the infringed copyrights, the defendant's infringing book itself declares: "[D]uring his long career [Mr. Kauffmann] always copyrighted his articles, reviews and essays in his own name rather than the name of the publication in which they first appeared."

## THE PARTIES

1. Plaintiff THE ESTATE OF STANLEY KAUFFMANN ("the Estate") is the successor owner of all copyrights owned in his lifetime by Stanley Kauffmann. It is based in New York County in the State of New York. ROBERT MARX was duly designated Preliminary Executor of the Estate by Order of the New York Surrogate's Court in February 2016.

2. Upon information and belief, and according to its website, defendant ROCHESTER INSTITUTE OF TECHNOLOGY ("RIT") was founded in 1829 and is "a privately endowed, coeducational university with nine colleges emphasizing career education and experiential learning." Upon information and belief, RIT conducts business throughout the State of New

York, the United States, and the rest of the world.

3. Upon information and belief, and according to its website, RIT PRESS "is a scholarly publishing enterprise at Rochester Institute of Technology. . . . As its editorial policies have evolved, the Press has broadened its reach to include content that supports all academic disciplines offered at Rochester Institute of Technology, our host institution. These include — but are not limited to — business, computer science, applied science and technology, engineering, graphic arts, deaf studies, and liberal arts. In 2007, an additional imprint, RIT Press, was established for all titles not related to the graphic arts. As of 2013, all publications will carry this imprint." (In this Complaint, "RIT" refers to both RIT itself and to its "enterprise" RIT PRESS.)

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1338. This is an action for copyright infringement under the United States Copyright Act. Venue in this district is proper pursuant to 28 U.S.C. §§1391(b) and 1400(a).

## UNDERLYING FACTS

5. The infringing book, discussed more fully in the following paragraphs, contains a "Biography" of Stanley Kauffmann. That Biography is reprinted in full as Exhibit "A" to this Complaint. In short, Stanley Kauffmann was an internationally-renowned critic and author whose work was published and widely read for over 50 years.

6. In late 2015, RIT published a book entitled "THE MILLENNIAL CRITIC: Stanley Kauffmann on Film: 1999-2009" ("The Infringing Book"). (Annexed hereto as Exhibit "B" is a copy of the press release issued by RIT in connection with its publication of the Infringing Book.) The Table of Contents of the Infringing Book lists 141 separate works that it acknowledges were the copyright property of Stanley Kauffmann (and now his Estate), and each of those works was included in the Infringing Book as published by RIT. (A copy of that Table of Contents, along with other "front matter," is set forth in full as Exhibit "C" to this Complaint.)

7. RIT had no lawful authorization or legal right to publish any of those works in the

Infringing Book, and thus the Infringing Book contains and constitutes 141 separate infringements of copyrights owned by the Estate. As of the date of this Complaint, however, only 44 of those works have been duly registered with the United States Copyright Office, a prerequisite to suing for infringement. Thus, at present, this action is limited to those 44 separate infringements. Referring to the Table of Contents of the Infringing Book, those 38 works are: "Shakespeare in Love"; "Hurlyburly"; "The Thin Red Line"; "Affliction"; "Private Confessions"; "Dr. Akagi"; "The Children of Heaven"; "The Dreamlife of Angels"; "Devil's Island"; "EdTV"; "The Winslow Boy"; "A Midsummer's Night's Dream"; "Tea with Mussolini"; "Star Wars"; "Besieged"; "Eternity and a Day"; "An Ideal Husband"; "Autumn Tale"; "My Son the Fanatic"; "The Gambler"; "Lucie Aubrac"; "West Beirut"; "American Beauty"; "Breakfast of Champions"; "Jakob the Liar"; "Three Kings"; "The Straight Story"; "Bringing Out the Dead"; "Rosetta"; "The Insider"; "Ride with the Devil"; "Sweet and Lowdown"; "The End of the Affair"; "Natural Born Killers"; "Grand Illusion"; "D'Artagnan's Daughter"; "Greed"; "Photographer"; "Close Up 1927-1933"; "Projections 9"; "The Death of Film"; "American Film Audiences"; "Stanley Kubrick"; and "Marcello Mastroianni." The remaining infringed works will be registered in due course and those infringements will either be added to this action or made the subject of a separate action.

8. Upon information and belief, RIT may have -- or may claim to have -- relied on representations by one Bert Cardullo in publishing the Infringing Book. If so, any such reliance was manifestly and shockingly reckless and irresponsible. In short, RIT had no basis or justification to rely on any such representations from a person who was then and is now a notorious plagiarist and abuser of the rights of others. Had RIT conducted even a minimal investigation into the character and reputation of Cardullo, it would have known then what it knows now -- that it should never have published the Infringing Book in the first place.

9. A limited recapitulation of the public information about Cardullo that, on information and belief, was readily available to RIT on the Internet includes:

3

a. The very first entry in a recent Google search for "Bert Cardullo" was from "Retraction Watch" and is entitled "Film review by noted critic a rerun, retracted." (That entire article, detailing Cardullo's history and reputation as a plagiarist, is annexed hereto as Exhibit "D.")

b. That same Google search also produced, on the first page, an article entitled "Where Did I Read That Before?," which also details Cardullo's history and reputation as a plagiarist. (A copy of that article is annexed hereto as Exhibit "E.")

c. A different Google search also produced an article entitled "A Fake is a Fake," which contains the following opening paragraph:

> From time to time, without expecting much, I follow the fate of Bert Cardullo, once respected film and theater scholar, whose voluminous plagiarisms have been exposed to the eyes of an unsuspecting -- and mostly uncaring -- public since *Senses of Cinema* published my article "A Hard Act to Follow" in 2006. Despite further exposure of his pilfering by Richard Brody in *The New Yorker* in 2010, as well as other reports sent to this blog, many of Cardullo's suspect texts remain in print and for sale on Amazon, and he himself remains a faculty member at a university in Izmir, Turkey.

(A copy of that article is annexed hereto as Exhibit "F.")

d. That same Google search also produced a public retraction by the editors of "SHAW: The Annual of Bernard Shaw Studies" and Penn State University Press of an article by Cardullo that was published in that journal. (A copy of that retraction is annexed hereto as Exhibit "G.")

e. That same Google search also produced a public retraction by the editors of "Comparative Drama" and Western Michigan University of an article by Cardullo that was published in that journal. (A copy of that retraction is annexed hereto as Exhibit "H.")

f. That same Google search also produced a public retraction by Oxford University Press of an article by Cardullo that was published in "The Cambridge Quarterly." That retraction stated in part as follows:

> The editors of Comparative Drama published this article in good faith, trusting in Mr. Cardullo's assertion that the article was original work that had not been published elsewhere. Unfortunately, this was not the case; as we later learned, Mr. Cardullo had published the same article repeatedly, changing only the title.

(A copy of that full retraction is annexed hereto as Exhibit "I.")

10. In addition, The Hudson Review, for which Cardullo served as a regular film reviewer, published the following apology in its Autumn 2007 issue:

TO OUR READERS

It has been called to our attention that several recent film reviews by Bert Cardullo published in this magazine have been inappropriately similar to reviews by Stanley Kauffmann that appeared in *The New Republic*. When asked for an explanation, Bert Cardullo apologized. We very much regret this occurrence and extend our own apologies to Stanley Kauffmann, to *The New Republic* and to our readers.

(A copy of that apology is annexed hereto as Exhibit "J.")

11. When The Estate first advised RIT that the Infringing Book was unauthorized and violated the rights of the Estate, RIT justified its publication of the book in part as follows:

I can confirm that Mr. Cardullo did provide the RIT Press with a letter from ShiffHardin LLP [sic] which confirmed that Stanley Kauffmann's will did in fact assert that Mr. Cardullo, and only Mr. Cardullo, may anthologize any and all reviews by Mr. Kauffmann, from the New Republic or any other journal, that are previously uncollected or un-anthologized in book form, however this letter is not information that the RIT Press would release to anyone absent a validly issued subpoena.

(A copy of that email is annexed hereto as Exhibit "K.")

12. Although RIT originally refused to produce a copy of that letter to the Estate without a "validly issued subpoena" for it, a copy of it was subsequently obtained by the Estate. (A copy of that "letter" is annexed hereto as Exhibit "L.") That letter is a crude and obvious forgery, and on information and belief RIT made no attempt to confirm its authenticity until after the Estate challenged the Infringing Book. RIT's purported reliance on it is both laughable and shameful.

13. The "copyright notice" in the Infringing Book states: "Copyright © 2015 Rochester Institute of Technology and Bert Cardullo." Insofar as RIT is concerned, it must have known at the time it made that claim that it was utterly false, since RIT had absolutely no copyright ownership of the contents of the Infringing Book. And insofar as Cardullo is concerned, RIT also must have known that Cardullo had absolutely no copyright ownership of the contents of the Infringing Book, if only because Cardullo makes that clear in the book itself.. Notably, the copyright

5

notice contains no reference whatever to Mr. Kauffmann or the Estate, although RIT clearly knew at the time that only the Estate owned all the underlying copyrights. To the extent Cardullo may have represented to RIT that he owned the underlying copyrights, as claimed in the copyright notice, RIT must have known that any such representation was manifestly false and fraudulent.

14. A recent and deplorable manifestation of Cardullo's character and utter disdain and disregard for Kauffmann's works and copyrights is his threat that if the Estate did not withdraw its objections to the infringements described in this Complaint, "I shall upload the attached pdf of the book to the Internet for anyone to read at his or her leisure, free of charge... And there will be nothing you or anyone else can do about it." (A copy of that email is annexed hereto as Exhibit "M.")

15. Thereafter, copies of the Infringing Book, and others, suddenly became freely available on the Internet. RIT was notified of this, but, on information and belief, it has not done anything to have those further infringements taken down, choosing instead to leave them freely available.

16. If RIT made even a rudimentary first-page only Google search for "Bert Cardullo" before relying on, if it did, any representations by him, it would have readily discovered his history and reputation as a plagiarist. To the extent RIT did not bother even to conduct such a simple, cost-free, Google search, it plainly acted in an entirely reckless and irresponsible manner in proceeding to publish the Infringing Book in (ostensible) reliance on Cardullo's representations.

17. Indeed, RIT has effectively admitted that its publication of the Infringing Book was irresponsible, indefensible, and illegal by its post-publication statement to the Estate -- but only after the Estate challenged the book -- that it has withdrawn the Infringing Book from publication.

18. Notwithstanding the public retractions by the distinguished publishers and publications cited above in Paragraph 9, and notwithstanding RIT's full awareness (and effective admission) of the illegality of the Infringing Book, on information and belief it has not issued a single public retraction or disavowal of the Infringing Book, not to mention any apology -- public or private -- to the Estate.

19. Prior to commencing this action, the Estate sought to explore with RIT a pre-litigation resolution of this matter, and it asked RIT to provide to it any documents that were submitted to it by Cardullo. However, RIT, through its General Counsel, Robert A. Colon, flatly refused both of those requests, thus in effect daring and forcing the Estate to bring this action. However, about three months later, RIT's outside counsel apparently overruled Mr. Colon's refusal and provided some, but not all, of the underlying documents requested by the Estate.

## CAUSE OF ACTION FOR COPYRIGHT INFRINGEMENT

20. Plaintiff incorporates here the contents of Paragraphs 1 through 19 above.

21. The unauthorized publication by RIT of the copyrighted works identified in Paragraph 7 above constitutes wilful infringement of the registered copyrights therein.

WHEREFORE, with respect to each act of copyright infringement by RIT, the Estate demands judgment a) adjudicating that RIT infringed the Estate's copyrights in the relevant works; b) issuing a permanent injunction preventing RIT from making any further use or publication of the Infringing Book or its contents; c) awarding to the Estate RIT's profits attributable to the infringements and all damages sustained by the Estate; d) awarding to the Estate its costs and attorneys' fees; c) awarding to the Estate punitive damages; and e) awarding such other relief as the Court deems just.

Dated: April 4, 2016

NORWICK, SCHAD & GOERING

By: _____
Kenneth P. Norwick (KN 4622)
110 East 59th Street
New York, New York 10022
(212) 751-4440
Attorneys for Plaintiff
ken@norwickschad.com